Filed 10/26/21  P. v. Acajabon CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>ROSE MARIE ACAJABON,<br><br>      Defendant and Appellant. | F081440<br><br>(Super. Ct. No. 12CM0820-003)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Randy L. Edwards, Judge.

J. Peter Axelrod, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Christina Simpson, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Levy, Acting P. J., Peña, J. and Smith, J.

## INTRODUCTION

In 2013, a jury found petitioner Rose Marie Acajabon guilty of the second degree murder of Armando Ramirez. (Pen. Code,[1] § 187, subd. (a).) For this offense, she was sentenced to a term of 15 years to life.

In 2019, petitioner filed a petition seeking resentencing pursuant to section 1170.95. The trial court denied the petition on the ground petitioner was prosecuted and convicted as a direct aider and abettor, and therefore was ineligible for resentencing.

Petitioner contends her petition was improperly denied because (1) she was not served with the People's opposition, (2) the court failed to appoint counsel as required, and (3) her petition set forth a prima facie claim for relief. We agree that the court prejudicially erred in denying the petition without the opposition having been properly served and without appointing counsel. We further conclude petitioner set forth a prima facie claim for resentencing relief and, accordingly, the petition was erroneously denied at the prima facie stage. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL HISTORY

This court previously summarized the facts underlying petitioner's offense as follows:

> "On March 5, 2012, Acajabon drove Jason Reyes and Donald Simpson into Hanford from Alameda County. Upon arriving in Hanford, the group met up with Reyes's daughter, [M.R.], and the four spent the afternoon smoking marijuana and consuming methamphetamine. Although [M.R.] had previously met Simpson, this was her first contact with Acajabon, whom her father referred to as 'wifey.' Later in the afternoon, after purchasing a train ticket back to Alameda for Simpson, the four stopped for food at a local McDonalds drive-through. At approximately 5:15 p.m., while the group was parked outside of the McDonald's restaurant, Reyes stated that he had been thinking about 'what he wanted to do' to a man named Armando Ramirez who lived in Hanford and had previously been convicted of molesting [M.R.]. Ramirez ended up serving nine years in prison for the offense. Still in the parking lot, Reyes informed the group that he had

---

[1]     Undesignated statutory references are to the Penal Code.

2.

thought a lot about what Ramirez had done to [M.R.] and that he wanted to 'get that fool' or '[w]e are going [to] get that fool.'

"After leaving the McDonald's parking lot, Acajabon stopped at a red light, and [M.R.] noticed that Ramirez was a passenger in an adjacent car. Acajabon and [M.R.] were in the front seats with Simpson and Jason in the rear. As the car containing Ramirez made a left-hand turn into a nearby Rite-Aid, Reyes pulled out a handgun and told Acajabon to turn into the Rite-Aid as well. Being in the incorrect lane to make a left-hand turn, Acajabon drove her car over the divider to reach the Rite-Aid parking lot and then maneuvered her car into a parking spot facing the exit. Reyes exited the vehicle, approached Ramirez, and fatally shot him.

"Afterwards, Reyes climbed back into Acajabon's car and she drove away from the scene, back to [M.R.]'s apartment complex. Upon arriving at the complex, Acajabon, Reyes, and [M.R.] switched cars, and Simpson disappeared. Acajabon, Reyes, and [M.R.] spent the evening at a local drug house, and, at some point during the night, Acajabon and Reyes left Hanford. The two were later apprehended by police in Ventura[.]" (*People v. Acajabon* (Mar. 20, 2015, F067381) [nonpub. opn.], fns. omitted.)

On March 25, 2013, the Kings County District Attorney filed a first amended and consolidated information charging petitioner and codefendant Simpson with the first degree murder of Ramirez (§ 187, subd. (a); count 1), with the allegation that the murder was committed intentionally and by means of lying in wait (§ 190.2, subd. (a)(15)).

On April 5, 2013, a jury found petitioner not guilty of first degree murder, but convicted her on count 1 of the included offense of second degree murder. On May 16, 2013, the court sentenced petitioner to a term of 15 years to life.

Petitioner appealed. Relevant here, she argued the trial court prejudicially erred in instructing the jury it could find her guilty of murder if it found she aided and abetted the transportation of methamphetamine and that murder was a "natural and probable consequence" of the transportation of methamphetamine. This court agreed the instruction was erroneous because the evidence suggested the murder was motivated by Reyes's desire to retaliate against Ramirez for crimes against Reyes's daughter and was unrelated to the transportation of methamphetamine. However, this court concluded the

3.

error was factual in nature, and did not prejudice petitioner because there was no affirmative indication the verdict rested on this unsupported ground. Rather, the verdict was supported by evidence that petitioner directly aided and abetted the murder. Accordingly, we affirmed. (*People v. Acajabon*, *supra*, F067381.)

On March 13, 2019, petitioner, in propria persona, filed a petition for resentencing pursuant to section 1170.95. In the petition, petitioner stated that she was convicted of murder as an aider and abettor, and that the jury instructions and arguments permitted her to be convicted under a natural and probable consequences theory of liability.

On May 9, 2019, the People filed an opposition to the petition, arguing that section 1170.95 is unconstitutional and petitioner is, in any event, ineligible for resentencing because she was convicted as a direct aider and abettor who acted with implied malice. Although the People acknowledged the possibility that petitioner was "arguably" convicted under a natural and probable consequences theory, they emphasized that she still could be convicted of murder as a direct aider and abettor and therefore was not entitled to relief. The People did not serve the opposition on petitioner, but rather on her trial counsel.

The court did not appoint counsel to represent petitioner and petitioner filed no reply to the People's opposition.

On June 3, 2020, the trial court summarily denied the petition. The court acknowledged that the jury was instructed it could find petitioner guilty under a natural and probable consequences theory on the basis that murder was a natural and probable consequence of transportation of methamphetamine. However, the trial court noted that this court found the natural and probable consequences instruction to be erroneous and unsupported by the evidence. The court also noted the jury was instructed on direct aider and abettor liability for murder, and that this court found substantial evidence that petitioner aided and abetted the murder. The court concluded: "The record does not support the conclusion that [p]etitioner was a participant in a separate target felony

4.

during which the murder occurred. The record – including the jury instructions – lays out a factual scenario in which [p]etitioner was an aider and abettor in murder itself and acted with the requisite malice in doing so." On that basis, the petition was denied.

This timely appeal followed.

## DISCUSSION

### I.     Senate Bill No. 1437 (2017-2018 Reg. Sess.) and Section 1170.95

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[2] (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

---

[2]     Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672, review granted Feb. 24, 2021, S266336.)

Finally, the bill "added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above."[3] (*Gentile*, at p. 843.)

"Section 1170.95 lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.) First, "an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd[]. (a)(1)-(3); see also § 1170.95, subd. (b)(1)(A).) Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' (§ 1170.95, subd. (b)(2).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Where the petition complies with the requirements of section 1170.95, subdivision (b)(1), counsel must be appointed, if requested. The prosecutor must file a response and the petitioner may file a reply. The trial court must then review the petition to determine if the petitioner has made a prima facie showing that he or she is entitled to relief.

---

[3] The Legislature recently passed, and the Governor signed, a bill amending section 1170.95. (Sen. Bill No. 775 (2021-2022 Reg. Sess.).) The amendments are not yet effective (Cal. Const., art. IV, § 8, subd. (c)(1)) and, in any event, would not alter our analysis. We quote from the version of section 1170.95 presently in effect.

(§ 1170.95, subd. (c); *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) In making this determination, the court may rely on the record of conviction. (*Lewis*, at pp. 970-971.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at pp. 971-972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (*Ibid.*)" (*Gentile*, *supra*, 10 Cal.5th at p. 853.)

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II.    The Petition was Improperly Denied

Petitioner contends her petition was improperly denied because (1) she was not served with the People's opposition, (2) the court failed to appoint counsel as required, and (3) she set forth a prima facie claim for resentencing relief.

Petitioner is correct that the People failed to serve the opposition on her and the trial court failed to appoint counsel to represent her. Proper service and appointment of counsel were both required by section 1170.95, subdivision (c). (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) Thus, we may affirm only if petitioner was not prejudiced by these errors. To demonstrate prejudice, petitioner must show that, absent the errors, it

7.

is reasonably probable her petition would not have been denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.) As we explain, we conclude petitioner has met her burden to demonstrate prejudice.

To be eligible for relief pursuant to section 1170.95, petitioner must have been convicted of felony murder or murder under a natural and probable consequences theory. (§ 1170.95, subd. (a); accord, *Gentile*, *supra*, 10 Cal.5th at p. 853.) Here, the jury was instructed on various theories of first and second degree murder, including general principles of aiding and abetting. In addition, over a defense objection, the jury was instructed it could convict petitioner of murder if it concluded she conspired or aided and abetted in the transportation of methamphetamine, and murder was a natural and probable consequence of that offense. In closing argument, the prosecutor argued three theories of liability: direct aiding and abetting, conspiracy to commit murder, and murder as a natural and probable consequence of the transportation of methamphetamine. The instructions and arguments leave open the possibility that petitioner was convicted of murder under a natural and probable consequences theory. Thus, the trial record does not establish petitioner is ineligible for resentencing relief as a matter of law.

Nonetheless, the People urge us to conclude petitioner is categorically ineligible for resentencing based on our decision in petitioner's direct appeal, specifically our determination that petitioner was not prejudiced by the erroneously given natural and probable consequences instruction. To resolve this argument, we must briefly address the legal principles we applied in that decision. When a trial court instructs a jury on two theories of guilt, one correct and one incorrect, the reviewing court must first determine whether the error in instructing on an incorrect theory is legal or factual in nature. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1128; accord, *People v. Aledamat* (2019) 8 Cal.5th 1, 7.) If the incorrect theory is legally inadequate, i.e., contrary to law, the error is subject to reversal unless it was harmless beyond a reasonable doubt. (*Guiton*, at p. 1128; *Aledamat*, at pp. 8-13.) However, if the incorrect theory was merely factually

unsupported, reversal is not required so long as a valid ground for the verdict remains and there is no "affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*Guiton*, at p. 1129.)

In petitioner's direct appeal, we determined the error in instructing on the natural and probable consequences theory was factual in nature. We therefore affirmed because there was no affirmative indication in the record that the verdict actually did rest on a natural and probable consequences theory. Additionally, a valid ground for the verdict remained, inasmuch as substantial evidence supported a verdict based on petitioner having directly aided and abetted the murder. (*People v. Acajabon*, *supra*, F067381.) Significantly, we were not required to apply, and did not apply, the harmless beyond a reasonable doubt standard. In other words, we were not required to find, beyond a reasonable doubt, that the erroneous instruction *did not actually* contribute to the verdict, or that the verdict was based on the valid theory of direct aiding and abetting. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1202, 1204-1205 [applying harmless beyond a reasonable doubt standard].) Because we did not definitively rule out the possibility that the verdict was based on a natural and probable consequences theory, we cannot now conclude that our holding affirmatively and unequivocally establishes petitioner is ineligible for resentencing relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 971-972.) Any such conclusion at this stage of the proceedings would require factfinding, which is strictly prohibited at the prima facie review. (*Id.* at p. 972.)

In light of the foregoing, we conclude there is a reasonable probability that the petition would not have been denied prior to the issuance of an order to show cause had petitioner been served with the People's opposition and afforded legal counsel. (*Lewis*, *supra*, 11 Cal.5th at pp. 973-974.) Accordingly, we cannot say the errors were harmless. Moreover, because we cannot determine from the record that petitioner is ineligible for resentencing as a matter of law, we conclude the trial court erred in denying the petition without issuing an order to show cause and holding an evidentiary hearing. (§ 1170.95,

9.

subds. (c), (d)(1); *Lewis*, *supra*, at pp. 971-972.)  Accordingly, we will reverse and remand for further proceedings.  In light of this disposition, we do not address petitioner's additional arguments in support of the issuance of an order to show cause.

## **DISPOSITION**

The June 3, 2020 order denying petitioner's section 1170.95 petition is reversed. On remand, the trial court is directed to appoint counsel to represent petitioner, and to issue an order to show cause and conduct further proceedings as required under section 1170.95, subdivision (d).